## MENCOFF v. A. D. JUILLIARD & CO., Inc.

### No. 4468.

United States Court of Appeals
First Circuit.

June 2, 1950.

John C. Going, Providence, R. I. (Peter W. McKiernan and McKiernan, McElroy & Going, Providence, R. I., with him on brief), for appellant.

John V. Kean, Providence, R. I. (William H. Edwards and Edwards & Angell of Providence, R. I., with him on brief), for appellee.

Before MAGRUDER, Chief Judge, and CLARK and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This appeal is from a judgment for the plaintiff in an action brought to recover the unpaid balance ($27,000) of the purchase price of eight sets of 48 x 48 worsted cards which the plaintiff alleged that it had unconditionally agreed to sell and sold to the defendant on or about June 7, 1948. The defendant in his answer admitted the jurisdictional facts alleged, but denied all the other allegations of the complaint generally, and also filed a counterclaim for damages in the amount of $9,500 which he alleged he had sustained by reason of the plaintiff's refusal to permit removal of the machines from its mill within ten days as had been agreed upon. The jurisdictional facts alleged and admitted are that the plaintiff is a Delaware corporation, that the defendant is a citizen of Rhode Island, and that the amount in controversy is substantially in excess of $3,000. Federal jurisdiction is therefore beyond question.

At the trial in the court below without a jury the plaintiff introduced evidence to the effect that it originally had in the carding room of its mill thirty-two cards of the kind described arranged in four rows of eight cards each; that it sold two rows of these cards to a purchaser early in 1948; that it sold a third row to a purchaser late in May 1948; and that it agreed to sell and sold the fourth and last row to the defendant on June 7, 1948, for $30,000, 10% down and the balance when riggers to be employed by the defendant to remove the machines should start to box up the first card, it being understood that the defendant's riggers were not to start work until riggers employed for the like purpose by the purchaser of the third row of cards had completed their work. Then the plaintiff introduced evidence that the riggers employed by the purchaser of the third row of cards completed their work in late July; that it promptly tried to notify the defendant of that fact but had great difficulty in reaching him; that it finally succeeded in reaching the defendant to notify him that his cards were ready to be taken out early in August; that the defendant did not send in riggers to remove his cards; and that on September 10, 1948, the defendant definitely refused to carry out his agreement.

The defendant testifying on his own behalf did not deny that he "bought eight sets of cards" from the plaintiff as alleged but said that he bought them "with the understanding I was going to get them in a week to ten days;" that not being allowed to send in his riggers promptly as promised, although he pressed the plaintiff's general agent hard to obtain permission to do so, he lost the customer to whom he had agreed to resell the cards and thereby lost not only the $3,000 deposit he had made on the cards on June 11, 1948, to bind his bargain with the plaintiff, but also lost his profits on the resale transaction amounting to $6,000, which with interest, amounted to a loss of $9,500 as alleged.

The court below found the plaintiff's version of the transaction to be correct. It found that upon the making of the contract

238

the "cards became, in accordance with the intention of the parties, the property of the defendant"; that at the time the contract was made the plaintiff told the defendant that for practical reasons his riggers would not be able to begin removal of the cards until the prior purchaser's cards were removed from the plaintiff's mill; that as soon as the prior purchaser's cards were removed the plaintiff's general agent and "other representatives, endeavored to communicate with the defendant so as to notify him that it was then possible for his riggers to start work with respect to said cards purchased by him;" that the defendant was so notified on August 10, and, that he refused to proceed further with the contract on September 10. Moreover the court categorically found that the "contract entered into by the parties did not include any provision nor any condition with respect to delivery of said cards within ten (10) days", and that the plaintiff had been "at all times ready, willing and able to carry out said contract and to deliver said cards in accordance therewith." Wherefore it concluded that the defendant's refusal to pay the balance of the purchase price constituted a breach of contract by him and rendered him liable to the plaintiff in the amount of $27,000. Accordingly it entered judgment for the plaintiff in the above sum and dismissed the defendant's counterclaim.

■ The defendant contends that the court below erred in finding that title to the cards passed at the time the contract was made, for, he says, the subject matter of the contract was not eight definitely ascertained cards, but eight cards later to be appropriated to the transaction from a larger number, and therefore until appropriation no title could pass under Rhode Island General Laws, 1938 Revision, Ch. 460 § 1 which provides in part that "Where there is a contract to sell unascertained goods no property in the goods is transferred to the buyer unless and until the goods are ascertained." We do not agree for the reason that it is abundantly clear that the subject matter of the contract was not eight unspecified cards to be picked at random from the thirty-two which the plaintiff originally had, but a specific row of eight cards, i. e.,

the last row left unsold of the four rows of eight cards each which the plaintiff originally owned.

■ The appellant's remaining contentions likewise have to do with the sufficiency of the evidence to support the findings of fact made by the court below, his contention on this appeal being that the evidence does not warrant those findings. A careful examination of the record, however, discloses ample evidence to support the findings and therefore under Rule 52(a), Federal Rules Civil Procedure, 28 U.S.C.A. the present appeal is wholly without merit.

The judgment of the District Court is affirmed.